UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

PALMER/KANE LLC,

        Plaintiff,

        vs.

BENCHMARK EDUCATION COMPANY LLC,
and DOES 1-10,

        Defendants.

Docket No.: 7:18-cv-09369-NSR

**MEMORANDUM IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS**

BALLARD SPAHR LLP

Robert Penchina
Catherine Seibel
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 850-6109
penchinar@ballardspahr.com
seibelc@ballardspahr.com

*Counsel for Defendant*

Date:  February 18, 2019

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

      I.      PLAINTIFF LACKS A VALID COPYRIGHT REGISTRATION ...................... 5

      II.     PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF
            LIMITATIONS ...................................................................................................... 9

      III.    PLAINTIFF HAS NOT SUFFICIENTLY IDENTIFIED THE
            INFRINGING WORKS OR THE INFRINGING ACTS .................................... 12

      IV.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR
            CONTRIBUTORY OR VICARIOUS INFRINGEMENT .................................. 16

            A.     The Complaint Does Not Identify Direct Infringement by a Third
                  Party ............................................................................................................ 17

            B.     The Complaint Does Not Allege Control or Financial Interest by
                  Benchmark ................................................................................................. 17

CONCLUSION ................................................................................................................. 19

## **TABLE OF AUTHORITIES**

**Cases**                                                                                      **Page(s)**

*Archie Comic Publ'ns, Inc. v. DeCarlo*,
    258 F. Supp. 2d 315 (S.D.N.Y. 2003)..........................................................................8

*Archie MD, Inc. v. Elsevier, Inc.*,
    261 F. Supp. 3d 512 (S.D.N.Y. 2017)..........................................................................7

*Architectural Body Research Found. v. Reversible Destiny Found.*,
    335 F. Supp. 3d 621 (S.D.N.Y. 2018)..........................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...............................................................................................4, 16

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
    2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018)...........................................................11

*Cole v. John Wiley & Sons*,
    2012 WL 3133520 (S.D.N.Y. Aug. 1, 2012).............................................................13

*Davis v. 24 Hour Fitness Worldwide, Inc.*,
    2014 WL 4955502 (D. Del. Sept. 30, 2014)..............................................................11

*Demetriades v. Kaufmann*,
    690 F. Supp. 289 (S.D.N.Y. 1988) ............................................................................18

*Design Basics, LLC v. Roersma & Wurn Builders, Inc.*,
    2012 WL 1830129 (W.D. Mich. Apr. 23, 2012) .......................................................12

*Diaz v. City Univ. of N.Y.*,
    2014 WL 10417871 (S.D.N.Y. Nov. 10, 2014).........................................................10

*Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*,
    896 F. Supp. 2d 223 (S.D.N.Y. 2012)..................................................................5, 6, 7

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
    443 F.2d 1159 (2d Cir. 1971).....................................................................................18

*Ivanova v. Columbia Pictures Indus.*,
    217 F.R.D. 501 (C.D. Cal. 2003) .................................................................................8

*Kamakazi Music Corp. v. Robbins Music Corp.*,
    534 F. Supp. 69 (S.D.N.Y. 1982) .............................................................................7, 8

*Kelly v. L.L. Cool J.*,
    145 F.R.D. 32 (S.D.N.Y. 1992) ........................................................5, 13

*Kronisch v. United States*,
    150 F.3d 112 (2d Cir. 1998)................................................................9

*Kwan v. Schlein*,
    441 F. Supp. 2d 491 (S.D.N.Y. 2006)...............................................11

*Latin Am. Music Co. v. Media Power Grp., Inc.*,
    705 F.3d 34 (1st Cir. 2013) ................................................................8

*Lefkowitz v. John Wiley & Sons, Inc.*,
    2014 WL 2619815 (S.D.N.Y. June 2, 2014) ....................................18

*Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*,
    23 F. Supp. 3d 344 (S.D.N.Y. 2014)................................................15

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
    83 F. Supp. 3d 501 (S.D.N.Y. 2015).................................................13

*Mahan v. Roc Nation, LLC*,
    2015 WL 1782095 (S.D.N.Y. Apr. 15, 2015)................................9, 11

*Manuel v. Paramount Pictures*,
    2001 WL 1135917 (S.D.N.Y. Sept. 26, 2001)..............................11, 12

*Marvullo v. Gruner & Jahr*,
    105 F. Supp. 2d 225 (S.D.N.Y. 2000)...........................................17, 18

*Matthew Bender & Co. v. West Publ'g Co.*,
    158 F.3d 693 (2d Cir. 1998)..............................................................17

*Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*,
    2012 WL 1021535 (S.D.N.Y. Mar. 26, 2012) ....................................5

*Ortiz v. Guitian Bros. Music Inc.*,
    2008 WL 4449314 (S.D.N.Y. Sept. 29, 2008)....................................11

*Ottoson v. SMBC Leasing & Fin.*,
    268 F. Supp. 3d 570 (S.D.N.Y. 2017)................................................9

*Palmer Kane LLC v. Scholastic Corp.*,
    2013 WL 709276 (S.D.N.Y. Feb. 26, 2013)..............................12, 13, 14

*Palmer Kane LLC v. Scholastic Corp.*,
    2014 WL 1303135 (S.D.N.Y. Mar. 31, 2014) ............................13, 14

*Palmer/Kane LLC v. Gareth Stevens Publ'g,*
  2017 WL 3973957 (S.D.N.Y. Sept. 7, 2017)................................................................6

*Palmer/Kane LLC v. Rosen Book Works, LLC,*
  188 F. Supp. 3d 347 (S.D.N.Y. 2016)................................................................6, 7

*Palmer/Kane LLC v. Rosen Book Works LLC,*
  204 F. Supp. 3d 565 (S.D.N.Y. 2016)................................................................6

*Perfect 10, Inc. v. Amazon.com, Inc.,*
  508 F.3d 1146 (9th Cir. 2007) ................................................................2, 17

*Polar Bear Prods., Inc. v. Timex Corp.,*
  384 F.3d 700 (9th Cir. 2004)................................................................11

*Psihoyos v. John Wiley & Sons, Inc.,*
  748 F.3d 120 (2d Cir. 2014)................................................................9

*Roberts v. Gordy,*
  877 F.3d 1024 (11th Cir. 2017)................................................................7

*Rosato v. Walt Disney Co.,*
  2018 U.S. Dist. LEXIS 188298 (S.D.N.Y. Oct. 31, 2018)................................................................9, 10

*Schneider v. Pearson Educ., Inc.,*
  2013 WL 1386968 (S.D.N.Y. Apr. 5, 2013)................................................................15

*Taylor v. Meirick,*
  712 F.2d 1112 (7th Cir. 1983)................................................................11

*Urban Textile, Inc. v. Cato Corp.,*
  2016 WL 6804911 (C.D. Cal. Apr. 1, 2016)................................................................7

*Warren v. John Wiley & Sons, Inc.,*
  952 F. Supp. 2d 610 (S.D.N.Y. 2013)................................................................15

*Williams v. Curington,*
  662 F. Supp. 2d 33 (D.D.C. 2009)................................................................11

*Williams v. McGraw-Hill Inc.,*
  2010 WL 11553017 (C. D. Cal. Nov. 16, 2010)................................................................8

**Statutes**

17 U.S.C. § 507(b)................................................................9

Copyright Act, 17 U.S.C. § 411(a)................................................................5, 8

Copyright Act, 17 U.S.C. § 411(b)(2)................................................................7

**Other Authorities**

37 C.F.R. § 202.3(b) ...........................................................................................................5

37 C.F.R. § 202.3(b)(10)(iii) (2018) ...............................................................................6

Defendant Benchmark Education Company LLC ("Benchmark") respectfully submits this memorandum in support of its motion to dismiss the complaint of Plaintiff Palmer/Kane LLC ("P/K") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Benchmark is a publisher of books and other educational materials for kindergarten through twelfth grade students.  From 2004 through 2006, Benchmark was licensed by the stock-photography agency Corbis Corporation to include various photographs purportedly owned by P/K in books published by Benchmark.  P/K now contends that there were 12 identified, and numerous unidentified, instances in which Benchmark allegedly infringed copyrights owned by P/K by using photos in a manner that supposedly exceeded the scope of the licenses granted by Corbis.  *See* Complaint ("Compl.") ¶ 17.  P/K's Complaint, however, fails to state a claim for several independent reasons, each of which is sufficient to dismiss P/K's claims as a matter of law.

*First*, P/K does not have a valid copyright registration for any of the works it claims Benchmark infringed, as is required to state a claim for copyright infringement.  Instead, P/K has put forward the same three registrations that courts have already rejected as invalid in prior litigations pursued by P/K.  Standing alone, this defect is fatal to all of P/K's claims.

*Second*, even if P/K had valid copyright registrations, all of its claims are barred by the Copyright Act's three-year statute of limitations, which is evident on the face of the Complaint. The statute of limitations begins to run when a plaintiff becomes aware or has reason to know of the alleged infringement.  Here, not only did all of the alleged infringements occur much more than three years before P/K filed the Complaint, but, as P/K's own pleadings demonstrate, P/K knew or should have known of the alleged violations at the time they occurred—*as early as 2005*.  The supposedly excess uses about which P/K now complains were reported to P/K in the

contemporaneous royalty information that was provided to P/K at the time, and were plainly evident from the widespread publication of the works at issue.

*Third*, P/K's attempt to assert claims for "additional acts of infringement" beyond 12 particular instances identified in the Complaint fails to meet the most basic pleading requirements.  P/K puts forth only conclusory allegations and surmises about imagined additional wrongs, but it fails to identify the allegedly infringed or infringing works, the nature of the alleged infringement, or even the time when the supposed infringement occurred—all of which are required to state a claim.  Indeed, P/K even failed to meet its pleading requirements for most of the 12 instances it purports to have identified.

*Fourth*, P/K's attempt to state a claim for contributory or vicarious copyright infringement also fails because its Complaint lacks facts capable of demonstrating a violation. Contributory or vicarious liability for copyright infringement simply cannot exist "in the absence of direct infringement by a third party."  *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) (citation omitted).  P/K's Complaint does not identify any direct infringement by a third party to which Benchmark allegedly contributed or for which it could be vicariously liable, and thus does not state a claim.  Nor does it provide facts capable of establishing any of the other elements of a claim for secondary liability.

Accordingly, P/K's Complaint be dismissed in its entirety.

## STATEMENT OF FACTS

Benchmark is a publisher of "educational materials in the form of paperback books," among other things.  Compl. ¶ 2.  According to the allegations of the Complaint, which are presumed to be true only for the purposes of this motion, P/K is a "stock photography production company" and it licenses its stock photos "through agencies such as Corbis Corporation ('Corbis')."  *Id.* ¶ 11.

2

The photograph titled "Family Watching Falling Star" was "licensed to Benchmark through Corbis for limited editorial use on June 28, 2004, and appeared in the book entitled *Stars*, which was published in or around 2004." *Id*. ¶ 37.  Around that time, Corbis issued royalty reports to P/K. *Id*.  ¶¶ 38-39.  "[B]ased on the royalty information reported to Palmer/Kane and the rate schedule in effect at the time," P/K was able to tell if "Benchmark used the photograph in a manner that materially exceeded the size limitation in the license." *Id*. ¶ 38. Viewing the royalty information, P/K determined that it did.  *Id*.

Similarly, the photo "Boy and Girl Looking at Globe" was "licensed to Benchmark through Corbis for limited editorial use on November 9, 2006, and appeared in the book entitled *Mapping the Way*, which was published in or around 2007." *Id*. ¶ 40.  "[B]ased on royalty information reported to Palmer/Kane and the rate schedule in effect at the time," P/K was able to determine whether, when Benchmark included the image in its book, "the size [was] enlarged beyond the scope of the license," and whether Benchmark made additional uses of the image. *Id*. ¶ 41.  Viewing this royalty information, P/K determined that Benchmark's use exceeded the scope of the license.  *Id*.

The image "Children Using Flash Cards" was "licensed to Benchmark through Corbis" on February 17, 2004, and "appeared in the textbook entitled *Welcome to our School*, which was published in or about 2004." *Id*. ¶ 21.  "[I]n 2015, Benchmark published a new edition of *Welcome to our School*, which included 'Children Using Flash Cards.'" *Id*. ¶ 23.  Likewise, P/K "through Corbis" licensed the photo "High School, Chemistry" to Benchmark for use "in the textbook entitled *Science Measuring Tools*, which was published in or around 2004." *Id*. ¶ 26. Then, "[i]n 2011," Benchmark openly "published a Spanish edition of *Science Measuring Tools* for use in the US market, entitled *Hablemos de los continents*, which included 'High School

3

Chemistry.'" *Id*. ¶ 27.  And, in 2006, Corbis also licensed Benchmark to include the photo "Boy and Girl Looking at Star Fish" in the book "entitled *Life at the Beach*, which was published in or around 2006." *Id*. ¶ 29.  P/K purports that this license "expired on October 16, 2007." *Id*.  In 2009, supposedly after the expiration of the license, "Benchmark facilitated or licensed the publishing of at least one foreign edition of *Life at the Beach* with an overseas publisher." *Id*. ¶ 30.

"[O]n October 9, 2006," Corbis licensed Benchmark to include the photo "Family Beach Outing" in "the book entitled *Summer to Fall*, which was published in or around 2007." *Id*. ¶ 32. According to the Complaint, "Benchmark participates in a process by which 19 (21 at the time) states . . . approve educational materials for all its school systems." *Id*. ¶ 33.  *Summer to Fall* "can be found as a current selection on the state-wide adoption lists." *Id*. ¶ 34.

Corbis also licensed Benchmark to include the photo "Sampling Water" in "the book entitled *Ocean Pollution*, which was published in or around 2007." *Id*. ¶ 43.  *Ocean Pollution* "was found in a US library in a set of 6 leveled readers called *The Environment*, which contains six leveled readers, including *Ocean Pollution*, six teachers' guides, and an ebook version of each title, all of which are dated 2006." *Id*. ¶ 44.

P/K initiated this action on October 12, 2018.

## ARGUMENT

To survive a motion to dismiss, a plaintiff must set forth factual allegations sufficiently plausible to allege each element of the alleged cause of action.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  These factual allegations must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  As such, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

A properly pleaded copyright infringement claim "must allege [i] which specific original works are the subject of the copyright claim, [ii] that plaintiff owns the copyrights in those works, [iii] that the copyrights have been registered in accordance with the statute, and [iv] by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994), *cert. denied*, 513 U.S. 950 (1994). P/K's allegations fall far short of these requirement.

## I.      PLAINTIFF LACKS A VALID COPYRIGHT REGISTRATION

Under Section 411(a) of the Copyright Act, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with" the Act. 17 U.S.C. § 411(a). As courts have made clear, a "plaintiff must 'either hold a *valid copyright registration* outright or have applied and been refused a registration prior to filing a civil claim.'" *Architectural Body Research Found. v. Reversible Destiny Found*., 335 F. Supp. 3d 621, 643 (S.D.N.Y. 2018) (emphasis added) (quoting *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co*., 2012 WL 1021535, at *5 (S.D.N.Y. Mar. 26, 2012)). None of the copyright registrations that P/K listed in the Complaint are valid, as a court in this district previously has held.

P/K alleges that all of its photos are covered by one of three registrations: Registration No. VAu 529-623, Registration No. VA 1-297-358, or Registration No. VA 1-811-724. Compl. ¶ 16. Each of P/K's registrations purports to cover a large collection of photos.

In order to qualify for group registration, the photos contained in a collection must meet various requirements set forth in the regulations governing group registrations. *See* 37 C.F.R. § 202.3(b). For instance, published and unpublished photos cannot be covered by the same registration. *See, e.g.*, *Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc*., 896 F. Supp. 2d

223, 230 (S.D.N.Y. 2012) ("Wrongly identifying a number of published individual works as [part of] an unpublished collection is a fundamental registration error" invalidating registration). And, published photos must be "published within the same calendar year" in order to be registered as a group.  37 C.F.R. § 202.3(b)(10)(iii) (2018).  In prior litigations pursued by P/K, courts have already rejected P/K's same registrations put forth here for failing to comply with these requirements.

In *Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565 (S.D.N.Y. 2016), P/K attempted to assert infringement claims against a textbook publisher based on these same registrations.  The court held that P/K's copyright registrations were invalid.  *Id*. at 571-74.  In particular, Judge Rakoff found that Registration Nos. VA 1-297-358 and Registration No. VA 1-811-724 both purported to cover images that had been first published across different years, and therefore held that P/K's "[i]mages are not validly registered with the Copyright Office."  *Id*. at 574.  The court accordingly dismissed P/K's infringement claims based on these registrations "because proper registration is a precondition to bringing an action for copyright infringement."  *Id*.

In addition, Judge Rakoff found earlier in that same case that Registration No. VAu 529-623 —the third registration put forward by P/K here—was also defective.  *See Palmer/Kane LLC v. Rosen Book Works, LLC*, 188 F. Supp. 3d 347, 352 (S.D.N.Y. 2016).  This registration purported to cover a collection of unpublished works, but the court found that it was "undisputed that the works [P/K] sought to register in [this] application had *been published* prior to plaintiff's filing of that application."  *Id*. at 351 (emphasis added).  *But see Palmer/Kane LLC v. Gareth Stevens Publ'g*, 2017 WL 3973957, at *14 (S.D.N.Y. Sept. 7, 2017) (finding issue of fact regarding whether P/K knowingly provided inaccurate information for registration).  Thus, the

court found this registration subject to invalidation because P/K "knowingly included inaccurate information on its application that could have led the Copyright Office to refuse registration." *Rosen Book Works*, 188 F. Supp. 3d at 352.  *Cf. Family Dollar Stores*, 896 F. Supp. 2d at 230 (invalidating registration for collection of unpublished works where published works were included); *Urban Textile, Inc. v. Cato Corp.*, 2016 WL 6804911, at *5 (C.D. Cal. Apr. 1, 2016) (same).

P/K had a full and fair opportunity to litigate the validity of these same three registrations, and thus the doctrine of issue preclusion collaterally estops P/K from relitigating that issue here.[1]  As set forth in *Kamakazi Music Corp. v. Robbins Music Corp.*, 534 F. Supp. 69 (S.D.N.Y. 1982):

> The basic requirements for collateral estoppel are: (1) the party against
> whom collateral estoppel is asserted must have been a party, or in privity
> with a party, to the prior action; (2) the issues to be collaterally estopped
> must have been finally determined on the merits; (3) the estoppel issues
> must have been essential, necessary, and material to the prior action;
> (4) the estopped issues must have been actually litigated, and the party to

[1] When addressing Registration No. VAu 529-623, the court did not outright invalidate this registration.  *See Rosen Book Works*, 188 F. Supp. 3d at 353.  Instead, as requested by the defendant in that case, the court agreed to refer the registration to the Copyright Office to obtain the Copyright Office's view on whether it would have refused registration had it known that the collection submitted for registration included both published and unpublished works.  *Id.*  Such a referral is called for by section 411(b)(2) of the Copyright Act, 17 U.S.C. § 411(b)(2). Generally, when responding to such referrals, the Copyright Office uniformly has indicated that it would not have issued a registration under these circumstances.  *See, e.g. Roberts v. Gordy*, 877 F.3d 1024, 1027 (11th Cir. 2017) ("The Copyright Office responded that it 'would have refused to issue a registration for an unpublished work' had it known of the publication/distribution information for the first registration" (citation omitted)); *Archie MD, Inc. v. Elsevier, Inc.*, 261 F. Supp. 3d 512, 515-16 (S.D.N.Y. 2017) ("the Register has already advised the Court that the Copyright Office would have refused registration of the Work as part of an unpublished collection had the Office known that the Work was published.").  Here, to the extent the Court does not agree that registration No. VAu 529-623 is invalid, then (i) Judge Rakoff's determination that the requirements for referral to the Copyright Office have been met is entitled to preclusive effect, and (ii) Benchmark respectfully requests the Court to refer to the Copyright Office the issue of whether P/K's registration would have been denied had the Office been aware that the submitted collection included published works.

be estopped must have had the opportunity to fully and fairly litigate the issues; and (5) the issues decided must be identical to the issues sought to be estopped.

*Id.* at 80.  Here, all of the requirements for collateral estoppel have been met.

First, P/K was a party to the prior actions.  Second, the issue of the validity of P/K's copyright registrations was finally determined on the merits. Third, the validity of P/K's copyright registrations was essential, necessary and material to the prior actions for copyright infringement, per the requirement set forth in 17 U.S.C. § 411(a).  Fourth, the validity of P/K's copyrights was actually litigated, and P/K had full and fair opportunity to litigate those issues. Fifth, the issue decided, namely, the validity of the same three registrations, is identical to the issue presented here.  P/K is therefore collaterally estopped from presenting Registration Nos. VAu 529-623, VA 1-297-358, and VA 1-811-724 as valid and subsisting registrations.  *See, e.g.*, *Latin Am. Music Co. v. Media Power Grp., Inc.*, 705 F.3d 34, 41-42 (1st Cir. 2013) (affirming grant of summary judgment for defendant where issue preclusion applied where plaintiff was found in earlier case not to own valid copyrights); *Williams v. McGraw-Hill Inc.*, 2010 WL 11553017, at *2 (C. D. Cal. Nov. 16, 2010) (granting motion to dismiss where plaintiff was precluded from asserting ownership where previous court "concluded that Williams did not own a valid copyright" in work at issue); *Archie Comic Publ'ns, Inc. v. DeCarlo*, 258 F. Supp. 2d 315 (S.D.N.Y. 2003) (granting summary judgment where defendant was estopped from asserting ownership of valid copyrights); *Ivanova v. Columbia Pictures Indus.*, 217 F.R.D. 501, 507-08 (C.D. Cal. 2003) (claim for infringement was barred by previous judgment that plaintiff holds no ownership in motion pictures at issue).

Because P/K lacks a valid copyright registration and is estopped from arguing otherwise, P/K cannot sustain a claim for copyright infringement, and its Complaint must be dismissed.

## II.   PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

P/K's complaint is also subject to dismissal on the separate ground that its claims are barred by the statute of limitations.  Under the Copyright Act, the limitations period for a copyright infringement claim is three years.  *See* 17 U.S.C. § 507(b).  Here, the Complaint demonstrates that the specific uses P/K now claims were infringements had been reported in royalty reports provided to P/K in some instances *more than a decade ago*.

The Second Circuit instructed in *Psihoyos v. John Wiley & Sons, Inc.* that copyright infringement claims accrue upon "actual or constructive discovery of the relevant infringement." 748 F.3d 120, 125 (2d Cir. 2014).  Thus, a claim accrues "when a plaintiff knows or has reason to know of the injury upon which the claim is premised."  *Mahan v. Roc Nation, LLC*, 2015 WL 1782095, at *3 (S.D.N.Y. Apr. 15, 2015) (granting motion to dismiss where copyright infringement claims were barred by the statute of limitations).  As the Second Circuit has noted in describing the diligence-discovery rule more broadly, though a mere "hunch, hint, suspicion, or rumor of a claim," alone does not result in the accrual of a claim, such suspicions "give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence." *Kronisch v. United States*, 150 F.3d 112, 121-22 (2d Cir. 1998) (finding claim time-barred where plaintiff's "hunch" gave rise to a "duty to diligently investigate his claim"), *abrogation on other grounds recognized by Ottoson v. SMBC Leasing & Fin.*, 268 F. Supp. 3d 570 (S.D.N.Y. 2017). Moreover, a complaint can be dismissed at this procedural stage on the grounds that it is time-barred "because the existence of an affirmative defense, the statute of limitations, is plain from the face of the pleading."  *Rosato v. Walt Disney Co.*, 2018 U.S. Dist. LEXIS 188298, at *4 (S.D.N.Y. Oct. 31, 2018) (granting motion to dismiss where claim was untimely based on plaintiff's own representations).

Here, P/K's own representations illustrate that it had actual knowledge or reason to know of its claims much more than three years ago.  In its complaint, P/K alleged that, in connection with "the book entitled *Stars*, which was published in or around 2004," P/K learned that "Benchmark used the photograph in a manner that materially exceeded the size limitation in the license."  Compl. ¶¶ 37-38.  As P/K's own pleading explained, P/K became aware of this alleged violation "based on . . . royalty information reported to Palmer/Kane and the rate schedule in effect ***at the time***."  *Id.* ¶ 38 (emphasis added).  In other words, P/K knew or had reason to know in 2005 from contemporaneous royalty information that Benchmark allegedly "materially exceeded the size limitation in the license."

Similarly, P/K knew or should have known of the alleged violation it claims occurred in another Benchmark book "entitled *Mapping the Way*, which was published in or around 2007." *Id.* ¶ 40.  P/K claims that when Benchmark included one of P/K's photos in this book, "the size [was] enlarged beyond the scope of the license" and the book made a second use that "the license did not include."  *Id.* ¶ 41.  Not only were these alleged infringements plainly observable when Benchmark published this book "in or around 2007," but P/K learned of them "based on royalty information reported to Palmer/Kane and the rate schedule in effect at the time."  *Id.* ¶¶ 40-41.

Because P/K's pleading demonstrates P/K long had knowledge of the basis for its claims with respect to at least two of Benchmark's books, P/K's claims for these books should be dismissed as time barred.  *See, e.g.*, *Rosato,* 2018 U.S. Dist. LEXIS 188298, at *4; *Diaz v. City Univ. of N.Y.*, 2014 WL 10417871, at *10 (S.D.N.Y. Nov. 10, 2014) (recommending that plaintiff's complaint be dismissed where copyright infringement claims was time-barred by plaintiff's own representations).

10

Moreover, in view of P/K's knowledge of those alleged infringements, P/K was on inquiry notice by 2005, and with ordinary diligence should have discovered *all* of the remaining infringements alleged by Benchmark. *See, e.g.*, *Davis v. 24 Hour Fitness Worldwide, Inc*., 2014 WL 4955502, at *4 (D. Del. Sept. 30, 2014) ("Once a plaintiff is in possession of facts that make him suspicious, or *that ought to make him suspicious*, he is deemed to be on inquiry notice." (citation omitted)); *Mahan*, 2015 WL 1782095, at *3-6; *Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *5 (S.D.N.Y. Sept. 28, 2018) (granting motion to dismiss where plaintiff's claims were time-barred because "Plaintiff was on notice of his claims at least as of the time he failed to receive royalties").

Once placed on such inquiry notice, a potential copyright infringement plaintiff "has a duty of diligence: it is not enough that he did not discover he had a cause of action, if a reasonable man could have." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707 (9th Cir. 2004) (quoting *Taylor v. Meirick*, 712 F.2d 1112, 1117-18 (7th Cir. 1983)).  Here, P/K should have discovered the alleged infringements because, whether or not it was on inquiry notice, when applying the statute of limitations to infringements arising from an alleged unauthorized use contained in a published work, the cause of action is deemed to accrue upon publication of that work.  *Kwan v. Schlein*, 441 F. Supp. 2d 491, 499 (S.D.N.Y. 2006) (plaintiff "knew or should have known . . . when the book was published–or shortly thereafter"); *Ortiz v. Guitian Bros. Music Inc*., 2008 WL 4449314, at *3 (S.D.N.Y. Sept. 29, 2008) ("Public distribution of the work at issue" found "to create sufficient notice to begin the running of the statute of limitations."); *Williams v. Curington*, 662 F. Supp. 2d 33, 38 (D.D.C. 2009) ("[T]he release date of each allegedly infringing song is an appropriate date on which to begin running the statute of limitations."); *Manuel v. Paramount Pictures*, 2001 WL 1135917, at *1 (S.D.N.Y.

Sept. 26, 2001) ("Anyone whose own work might have been in any way infringed by the film surely was on notice of its content and features within weeks of its release."); *cf. Design Basics, LLC v. Roersma & Wurn Builders, Inc.*, 2012 WL 1830129, at *2 (W.D. Mich. Apr. 23, 2012) ("If an infringement is initially remote, concealed or not subject to reasonable discovery by an unsuspecting copyright holder in his everyday routine, he should not lose his copyright protection unwittingly.  Conversely, if the infringement is open and notorious, the copyright holder should be expected to discover it within a three year period.").

Because all of Benchmark's allegedly infringing books were openly and widely published more than three years before the filing of the Complaint, and P/K was aware or on notice of the alleged infringements, the statute of limitations ran out for all of P/K's claims before it filed this case.  *See, e.g.*, Compl. ¶ 27 ("In 2011, well after the expiration of the license, Benchmark published a Spanish edition of *Science Measuring Tools* for use in the US market, entitled *Hablemos de los continents*, which included 'High School Chemistry'"); ¶¶ 43-44 ("the book entitled *Ocean Pollution*, which was published in or around 2007" also included "an ebook version . . . dated 2006").

## III.   PLAINTIFF HAS NOT SUFFICIENTLY IDENTIFIED THE INFRINGING WORKS OR THE INFRINGING ACTS

Plaintiff's Complaint is also subject to dismissal on the separate ground that, with very limited exception, its claims do not satisfy the pleading requirements of the Federal Rules of Civil Procedure.

In order to state a claim for copyright infringement a plaintiff "must allege '1) *which specific original works are the subject of the copyright claim*, 2) that plaintiff owns the copyrights in those works, 3) that the copyrights have been registered in accordance with the statute, and 4) *by what acts during what time the defendant infringed the copyright*.'"  *Palmer*

*Kane LLC v. Scholastic Corp.*, 2013 WL 709276, at *2 (S.D.N.Y. Feb. 26, 2013) ("*Scholastic I*")
(emphasis added) (quoting *Kelly*, 145 F.R.D. at 36); *see, e.g., LivePerson, Inc. v. 24/7 Customer,
Inc.*, 83 F. Supp. 3d 501, 507-09 (S.D.N.Y. 2015) (granting motion to dismiss where plaintiff's
copyright infringement claim was not adequately pled); *Cole v. John Wiley & Sons*, 2012 WL
3133520, at *11-14 (S.D.N.Y. Aug. 1, 2012) (granting motion to dismiss where plaintiff failed to
allege which specific original works were subject of the copyright claim and by what acts during
what time the defendant infringed the copyright).

On at least two prior occasions, courts have rejected complaints filed by P/K for failing to
comply with these standards.  *See Scholastic Corp.*, 2013 WL 709276, at *3-4; *Palmer Kane
LLC v. Scholastic Corp.*, 2014 WL 1303135, at *3-5 (S.D.N.Y. Mar. 31, 2014) ("*Scholastic II*").
Nevertheless, P/K's complaint here once again attempts to assert claims based on unidentified
photos supposedly infringed during unspecified time periods by unidentified books.

In *Scholastic I*, the court admonished P/K that "provid[ing] a spreadsheet listing its
works" but "alleg[ing] that the copyright claims are not limited to these works" is insufficient
because "it fails to meet the first *Kelly* requirement."  2013 WL 709276, at *3.  In that case, like
here, "Palmer Kane ha[d] provided a list of works but indicated that this list is not exhaustive."
*Id*.  Because P/K's allegations "fail[ed] to sufficiently plead the works at issue, the infringing
acts, and the relevant time period in which the infringing acts occurred," the court dismissed
P/K's complaint for failure to state a claim.  *Id*. at *4.  *See also Scholastic II*, 2014 WL
1303135, at *3-4 (complaint dismissed where P/K's Exhibit A to the complaint "does not contain
an exhaustive list" of images allegedly infringed, holding that merely "identifying books
published by Scholastic that contain unauthorized photographs . . . [is] not sufficient because

Palmer Kane does not specify the timeframe during which Scholastic committed the infringement").

Here, P/K once again inappropriately pleads that unidentified works allegedly have been infringed in unidentified books.  Thus, although the complaint purports that "Palmer/Kane has identified at least 12 acts of infringement by Benchmark," it is replete with the same type of allegations rejected in *Scholastic I* and *II*.  *See* Compl. ¶ 25 ("Palmer/Kane has identified multiple acts of infringement involving at least four additional Palmer/Kane Photographs, which Benchmark published in new print editions of textbooks containing the Photographs after Corbis relinquished the right to do so."); ¶ 28 ("Palmer/Kane has identified at least four other Benchmark Spanish Translation (US Market) editions using Palmer/Kane photographs after any expiration of the license to do so."); ¶ 31 ("Palmer/Kane has identified at least five other Benchmark foreign titles published overseas in cooperation with one or more foreign publishers in violation of the prohibitions against permanently retaining high resolution image files and the transfer of licensing rights in the license terms governing the use of photographs."); ¶ 35 ("Upon information and belief other Benchmark titles with Palmer Kane images appear or have appeared on the approval lists for these three states and along with *Summer to Fall*, likely appear on other states' approval lists of acceptable core and supplemental programs."); ¶ 39 ("Upon information and belief, the same royalty reporting indicates that Benchmark exceeded the size limitations on at least five additional licenses of Palmer/Kane images.").  Thus, just as in *Scholastic I* and *II*, P/K's provision of "a list of works" with an "indicat[ion] that the list is not exhaustive" fails to

14

meet the pleading requirements of Rule 8. *See, e.g., id.* ¶ 4 ("the infringements detailed in this Complaint are but a fraction of the acts of copyright infringement that Benchmark committed"). [2]

Moreover, P/K has even failed to plead facts sufficient to state a claim for all 12 of the infringements it purports to identify.  In P/K's own words, the Complaint only "presents *seven* examples of the infringements."  Compl. ¶ 20 (emphasis added).  Thus, although Exhibit A to the Complaint lists 12 photos and 12 allegedly infringing titles (plus one "Unknown title and ancillary products"), the Complaint provides no facts spelling out the alleged infringing acts for 5 of the listed photos (*i.e.*, for the photos entitled "Workers in Protective Suits Sampling Lake Water"; "Veterinarian Giving Dog Examination"; "Juicy Fruit"; "A line of Shadows"; and "Speeding Wheelchair Athlete.").  And, at least 2 of the 7 provided examples do not state a claim because they provide nothing more than conclusory assertions and surmises.

For example, the photo "Family Beach Outing" was licensed to Benchmark and "appeared in the book entitled *Summer to Fall*, which was published in or around 2007."  Compl. ¶ 32.  P/K's claim relating to this photo is nothing more than rank speculation.  Rather than facts demonstrating infringement, P/K pleads that the book has appeared on the "approval lists" for three states, and guesses that it "likely appear[s] on other states' approval lists" as well.  *Id*. ¶ 35. P/K then surmises that if a book were adopted by a state or city, it would "require publishers to

---

[2] Even if this Court finds that P/K adequately alleged copyright infringement for the images explicitly detailed in Exhibit A, it should nevertheless dismiss P/K's claim with respect to any works not identified in Exhibit A.  *See Lefkowitz v. McGraw-Hill Global Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 353 n.7 (S.D.N.Y. 2014) (dismissing portion of complaint based on works "yet to be discovered" and restricting copyright infringement claim to works listed in chart); *Schneider v. Pearson Educ., Inc.*, 2013 WL 1386968, at *3 (S.D.N.Y. Apr. 5, 2013) ("[T]o the extent that Plaintiff has attempted to state a claim for copyright infringement concerning works other than the ten listed in Exhibit A of the Complaint, he has failed to do so."); *Warren v. John Wiley & Sons, Inc.*, 952 F. Supp. 2d 610, 617 n.2 (S.D.N.Y. 2013) ("To the extent that [plaintiff] intends to assert copyright claims regarding these unspecified photographs, that portion of his Complaint is dismissed.").

provide substantial inventory to fulfill orders in a timely manner." *Id.* ¶ 36.  Layering

speculation on surmise, P/K then reasons that multiple states' "inventory requirements

collectively would exceed the total print run Benchmark has licensed." *Id.*  Thus, P/K guesses,

upon information and belief, that there may have been infringing "excesses." *Id.*  This is

precisely the type of speculative pleading foreclosed by *Twombly*.

Similarly, the photo "Sampling Water" was licensed to Benchmark and "appeared in the

book entitled *Ocean Pollution*, which was published in or around 2007." *Id.* ¶ 43.[3]  The only

allegation about this book is that "[t]his title was found in a US library in a set of 6 leveled

readers called *The Environment*, which contains six leveled readers, including *Ocean Pollution*,

six teachers' guides, and an ebook version of each title, all of which are dated 2006." *Id.* ¶ 44.

This allegation simply does not state a claim for infringement.

## IV.    PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR CONTRIBUTORY OR VICARIOUS INFRINGEMENT

P/K attempts to compound a simple copyright infringement claim by tacking on a third

and fourth cause of action for contributory copyright infringement and vicarious copyright

infringement.  P/K, however, fails to state a claim under either cause of action because it:

(1) fails to identify any direct infringement allegedly committed by a third party, and (2) fails to

allege that Benchmark had any control or direct financial interest in any third party infringement.

---

[3] There are discrepancies between the descriptions relating to this photo in the body of the complaint and in Exhibit A.  Exhibit A does not list a photo titled "Sampling Water."  Instead, it lists two other similarly named photos: "Workers in Protective Suits Sampling Lake Water" and "Water Testing"; and the date of publication given for the book titled *Ocean Pollution* is given in Exhibit A as 2005, rather than 2007 as set forth in the body of the complaint.

## A.   The Complaint Does Not Identify Direct Infringement by a Third Party

It is fundamental that "[s]econdary liability [*i.e.,* contributory or vicarious liability] for copyright infringement does not exist in the absence of direct infringement by a third party." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) (citation omitted).  *See also, e.g.*, *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998) (rejecting plaintiff's contributory infringement claim, in part, because the plaintiff "has failed to identify any primary infringer"); *Marvullo v. Gruner & Jahr*, 105 F. Supp. 2d 225, 229 (S.D.N.Y. 2000) ("As a threshold matter, to adequately plead contributory copyright infringement plaintiff must initially plead a direct infringement.").

Here, the Complaint does not identify any direct infringement by a third party to which Benchmark contributed or for which it could be vicariously liable.  Rather, P/K conclusorily alleges that Benchmark is "directing and enabling Terbilang Buku and others to publish and display publicly Benchmark textbooks that contain the photographs."  Compl. ¶ 63.  The Complaint, however, does not identify "Terbilang Buku" nor any publication or display made by he, she, or it.  The Complaint likewise does not identify any photographs or books involved in any alleged actions by "Terbilang Buku."  The failure to identify any direct infringement by a third party is fatal to P/K's claims of contributory or vicarious infringement against Benchmark. *See Marvullo*, 105 F. Supp. 2d at 229 ("Since the second amended complaint fails to adequately plead a direct copyright infringement, plaintiff's contributory infringement claim would fail.").

## B.   The Complaint Does Not Allege Control or Financial Interest by Benchmark

Furthermore, even if there were adequate allegations of infringement by a third party, the Complaint contains no facts capable of demonstrating that Benchmark induced or had the right

and ability to control the acts of "Terbilang Buku," (or any other third party) or that it had a direct financial interest in alleged infringements that "Terbilang Buku" (or any other third party) committed.  Accordingly, P/K's claims for contributory and vicarious liability fail.

A contributory infringer is one who, "with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).  Thus, "knowledge and participation [are] the touchstones of contributory infringement." *Demetriades v. Kaufmann*, 690 F. Supp. 289, 293 (S.D.N.Y. 1988).  Moreover, "participation in the infringement must be substantial and the authorization or assistance must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer." *Lefkowitz v. John Wiley & Sons, Inc.*, 2014 WL 2619815, at *11 (S.D.N.Y. June 2, 2014) (citation omitted).  A plaintiff alleging vicarious liability must show that the defendant "has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Gershwin Publ'g*, 443 F.2d at 1162.

P/K's complaint contains no allegations beyond conclusory statements that Benchmark had substantially participated or had knowledge of infringement by a third party or had a financial interest in infringement by a third party.  Without any plausible allegations of control or financial interest, P/K's claims for contributory and vicarious liability necessarily fail.  *See Marvullo*, 105 F. Supp. 2d at 229-30 ("Even assuming arguendo that plaintiff had sufficiently alleged a direct infringement by Gruner & Jahr, in order then to plead contributory infringement against Stern plaintiff must have alleged that Stern had actual or constructive knowledge of, and participated in, Gruner & Jahr's infringing conduct.").

## **CONCLUSION**

For the foregoing reasons, Benchmark respectfully requests that the Court grant its

motion to dismiss P/K's Complaint in its entirety, together with such other and further relief as

the Court deems just and appropriate.

DATED: February 18, 2019          BALLARD SPAHR LLP


By: _/s/ Robert Penchina_

Robert Penchina
Catherine Seibel
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 850-6109
penchinar@ballardspahr.com
seibelc@ballardspahr.com

*Counsel for Defendant Benchmark Education
Company LLC*