UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
: 
PALMER/KANE LLC,                                         :
                                                        :
            Plaintiff,                                  :     **Index No. 7:18-cv-09369-NSR**
                                                        :
            v.                                          :
                                                        :
BENCHMARK EDUCATION COMPANY                             :
LLC, and DOES 1-10,                                     :
                                                        :
            Defendants,                                 :
                                                        :
-------------------------------------------------------- X


**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL SUMMARY .......................................................................................................2

ARGUMENT .......................................................................................................................5

I.   All of the Copyrights Are Valid..................................................................................5

    A.   The '623 Registration Was Not Invalidated, Was Never Referred to the Copyright Office, and Two Other District Judges Disagreed as to Whether Referral Was Even Appropriate ....... 5

    B.   The '358 Registration Has Been Augmented – Not Invalidated – to Address and Clarify the Concerns Raised in Prior Litigations ............................................................... 12

    C.   The '724 Registration Remains Valid.............................................................. 14

    D.   Benchmark's Caselaw Does Not Relate to Group Registration of Photographs, Making It Irrelevant ....................................................................................................... 15

II.  None of PK's Claims Are Barred by Statute of Limitations .................................16

    A.   PK Does Not Allege It Knew of Any Infringements in 2005........................... 16

    B.   Benchmark's Laches Argument Has Been Rejected by the United States Supreme Court17

III. Benchmark's Additional Arguments Are Premature................................................22

CONCLUSION...................................................................................................................25

<h1 style="text-align:center"><strong><u>TABLE OF AUTHORITIES</u></strong></h1>

**<u>Cases</u>**

*Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010) ........................................................................... 2

*Family Dollar Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223 (S.D.N.Y. 2012) ................................................................................................................................. 9, 16

*Fischer v. Forrest*, 14-cv-1304-PAE-AJP, 2017 WL 128705 (S.D.N.Y. Jan. 13, 2017), *report and recommendation adopted*, 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017) .......... 19

*Grant Heilman Photography, Inc. v. Pearson Educ., Inc.*, No. 11-CV-4649, 2012 WL 12897914 (E.D. Pa. July 27, 2012) ....................................................................................... 19

*Mount v. Book-of-the-Month Club, Inc.*, 555 F.2d 1108 (2d Cir.1977) ........................................ 18

*Palmer/Kane LLC v. Gareth Stevens Publishing*, 1:15-cv-7404-GHW, 2016 WL 6238612 (S.D.N.Y. Oct. 24, 2016) ................................................................................................ 6, 7, 8

*Palmer/Kane LLC v. Gareth Stevens Publishing*, 1:15-cv-7404-GHW, 2017 WL 3973957 (S.D.N.Y. Sept. 7, 2017) ..................................................................................................... 6, 8

*Palmer/Kane LLC v. Rosen Book Works*, 118 F. Supp. 3d 347 (S.D.N.Y. 2016) .......................... 6

*Palmer/Kane LLC v. Rosen Book Works*, 204 F. Supp. 3d 565 (S.D.N.Y. 2016) ................. 13, 15

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 (2014) ................................................ 18

*Stone v. Williams*, 970 F.2d 1043 (2d Cir. 1992) ........................................................................ 18

*Urban Textile, Inc. v. Cato Corporation*, 2:14-cv-06967-ODW, 2016 WL 6804911 (C.D. Cal. 2016) ............................................................................................................................ 16

**<u>Statutes</u>**

17 U.S.C. § 408(d) ...................................................................................................................... 13

17 U.S.C. § 411(b)(2) ........................................................................................................... 6, 7, 8

37 C.F.R. § 202.20(c)(2)(xx) ...................................................................................................... 10

37 C.F.R. § 202.3(b)(10)(iii) (2018) ................................................................................. 9, 10, 11

37 C.F.R. § 202.6 ........................................................................................................................ 13

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 2, 5

**Other Authorities**

The Compendium of U.S. Copyright Office Practices (Third Edition)................................. passim

Plaintiff Palmer/Kane LLC ("PK" or "Plaintiff") submit this Memorandum of Law, and the accompanying Declaration of Hillel I. Parness ("Parness Dec."), in opposition to Defendant Benchmark Education Company LLC's ("Benchmark" or "Defendant") motion to dismiss the complaint.

## PRELIMINARY STATEMENT

The above-captioned action is brought by PK, the undisputed owner of professionally-taken photographs, that Benchmark used without or in excess of licenses from PK, in violation of PK's federally-registered copyrights. Benchmark moves to dismiss on the primary theory that PK's copyrights are invalid, and the secondary theory that PK's claims are barred by the applicable statute of limitations. Both of these arguments are wrong, and the motion should be denied.

PK claims that Benchmark has infringed three of its copyrights, each of which covers multiple photographs. At all pertinent times, all three copyrights have been, and remain, 100% valid. No party or court has invalidated, or even attempted to invalidate, any of them. Benchmark's arguments that the registrations do not or cannot cover the photographs at issue depend on misstatements and incomplete descriptions of what transpired in prior litigations, leaving out key facts about actions taken since those prior litigations, and failure to recognize controlling copyright precedent and procedure. The copyrights are valid, and thus the claims of infringement are sufficiently pled.

Benchmark's statute of limitations argument is based on a (presumably unintentional) misreading of three words in the complaint ("at the time"), which Benchmark attempts to spin into a broad argument that makes all of PK's claims untimely. Reading the words correctly causes this argument to unravel quickly and completely. Furthermore, Benchmark's statute of

limitations argument ignores United States Supreme Court law precedent regarding the "rolling three-year lookback" for damages claims in copyright cases, and also ignores that the discovery rule, alive and well in the Second Circuit, could further extend the period encompassing live claims.

Benchmark's final arguments are both based on the fact that PK has limited information – because it has limited access to information – on infringements beyond the 12 for which it presents detailed allegations.  PK nevertheless sets forth the substantial basis for its allegations of additional acts of primary and secondary copyright infringement, and its allegations are sufficient to survive a motion to dismiss.  If in the course of discovery PK is unable to assemble the facts required substantiate them further, PK suffers no illusion that it may not ultimately prevail on them.  But those are questions that must wait until after fact discovery.  Benchmark's motion should be denied.

## FACTUAL SUMMARY[1]

Palmer/Kane is a stock photography production company that produces commercial imagery licensed through agencies such as Corbis Corporation ("Corbis"), Getty Images, Inc. ("Getty Images") and Alamy Ltd. ("Alamy") and occasionally directly to the end user. Palmer/Kane has been in business for 40 years. Over the last 20 years, Palmer/Kane has issued, through its agents, over 5,000 licenses for book use through The Stock Market ("TSM"), and its successor-in-interest, Corbis, some of them to Defendant Benchmark Education Company.

Palmer/Kane was founded by the husband and wife team of Gabe Palmer and Patricia Kane, who are also the members of the LLC.  Mr. Palmer is a professional photographer who

---

[1] The parties are in agreement that on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the District Court assumes the facts alleged by the plaintiff to be true.  *Caro v. Weintraub*, 618 F.3d 94, 97 (2d Cir. 2010).

makes his living taking photographs and licensing them through the Palmer/Kane business, while Ms. Kane is primarily responsible for the day-to-day operations of the business.

Palmer/Kane is the exclusive owner to the copyrights to thousands of photographs, 11 of which are at issue in this case, and all of which are alleged to be the subject of one of the following three registrations with the United States Copyright Office, and a fourth one that was inadvertently excluded from the Complaint:

- VAu 529-623, Registered June 25, 2001 (the "'623" registration)
- VA 1-297-358, Registered February 2, 2005 (the "'358" registration)
- VA 1-811-724, Registered October 12, 2011 (the "'724" registration)
- VA 1-953-210, Registered March 23, 2015 (the "'210" registration)[2]

To date, Palmer/Kane has identified at least 12 acts of infringement by Benchmark of its photographs. These infringements are set forth in the chart attached to the Complaint as **Exhibit A**, and reproduced with minor variations here:

| Photograph Title | Photograph ID | Copyright Registration | Publication Date(s) | Infringing Title(s) |
|---|---|---|---|---|
| *Workers in Protective Suits Sampling Lake Water* | I4690008 | '623 Registration | 2006 | "Discover Forensic Chemistry" and ancillary products. |
| *Water Testing* | I4670102 | '623 Registration | 2005 | "Ocean Pollution" and ancillary products. |
| *High School Chemistry* | O0670109 | '623 Registration | 2004 | "Science Measuring Tools" and ancillary products. |

---

[2] In the course of preparing this Opposition, PK realized that one of the photographs – "Boy and Girl Looking at Globe" was covered by the '210 registration, rather than the '724 registration. Following disposition of this motion, PK will seek permission from the Court to amend the Complaint accordingly.

| Photograph Title | Photograph ID | Copyright Registration | Publication Date(s) | Infringing Title(s) |
|---|---|---|---|---|
| *Family Watching Falling Stars* | PE1220350 | '623 Registration | 2006 | "Stars" and ancillary products. |
| *Children Using Flash Cards to Learn Math* | O0660106 | '623 Registration | 2004 | "Welcome to Our School" and ancillary products. |
| *Veterinarian Giving Dog Examination* | SC0030102 | '623 Registration | | Unknown title and ancillary products. |
| *Juicy Fruit* | NT5288640 | '358 Registration | 2004 | "Crazy Fruit Salad" and ancillary products. |
| *Brother and Sister at the Beach* | PE0040191 | '358 Registration | 2007 | "Life at the Beach" and ancillary products. |
| *A line of Shadows* | PE0410488 | '358 Registration | 2011 | "Making Maps" and ancillary products. |
| *Family Beach Outing* | PE0130107 | '358 Registration | 2007 | "Summer to Fall" and ancillary products. |
| *Boy and Girl Looking at Globe* | 4215212623 | '210 Registration | 2007 | "All About Continents" and in "Mapping the Way" and ancillary products for both titles. |
| *Speeding Wheelchair Athlete* | PS2710298 | '724 Registration | 2005 | "Three Laws of Motion" and ancillary products. |

As discussed below, the '358 registration was augmented in 2018, whereby the Copyright Office wrote that the '358 registration "was not intended to include previously registered, pre-existing material that was a part of the Palmer Kane collection and therefore included in the printout provided by Corbis."

As alleged in the Complaint, PK did not have easy access to the catalog of Benchmark's publications, and certainly did not have easy access to the particular photographs used in those publications. *See* Complaint ¶ 4 ("Upon information and belief, the infringements detailed in this Complaint are but a <u>fraction</u> of the acts of copyright infringement that Benchmark committed, as they represent what Palmer/Kane has been able to discover through its own research, without access to Benchmark's records revealing the full scope of infringing publications"). Benchmark's self-serving statements to the contrary, such as its assertion without citation that "all of Benchmark's allegedly infringing books were openly and widely published" (Benchmark Br. at 12), should be eliminated from consideration in the context of this Rule 12(b)(6) motion.

## ARGUMENT

### I. All of the Copyrights Are Valid

Benchmark's primary argument is that the three copyrights at issue – the '623, the '358 and the '724 – are all void, or should be treated as void, due to prior litigations involving PK and the copyrights. These arguments are wrong.

#### A. The '623 Registration Was Not Invalidated, Was Never Referred to the Copyright Office, and Two Other District Judges Disagreed as to Whether Referral Was Even Appropriate

Benchmark correctly states that the '623 registration has been the subject of motion practice in other cases on the theory that the registration – a group registration for photographs – was comprised of published photographs, and not unpublished photographs, an error that can be used to have the registration voided. Judge Rakoff addressed the '623 registration in *Palmer/Kane LLC v. Rosen Book Works LLC*, and Judge Woods discussed it again in *Palmer/Kane LLC v. Gareth Stevens Publishing*. Benchmark paints a decidedly incomplete and misleading picture of what Judge Rakoff did and did not do, and almost completely ignores

Judge Woods' views on the subject. As discussed below, nothing that occurred previously should have any impact on this case.

On May 27, 2017, on the defendant's motion for referral of the '623 registration to the Copyright Office, Judge Rakoff concluded as follows:

> In sum, the Court finds that defendant has met its burden under § 411(b)(2) of demonstrating that a referral to the Copyright Office is warranted and, indeed, required. As such, the Court grants defendant's motion and will issue a request to the Register of Copyrights to advise the Court whether knowledge that the works registered under Registration No. VAu 529-623 had been published prior to May 18, 2001 would have caused the Register to refuse registration. Before doing so, however, the Court will grant each party leave to file a two-page letter with the Court, by no later than June 1, with no more than three questions that it proposes the Court submit to the Copyright Office. Each party may briefly explain the basis of each proposed question. The parties are urged to confer regarding the language of their proposed questions with the objective of reaching agreement on appropriate phrasing that is consistent with this Memorandum Order. In any case, regardless of whether agreement is reached, the Court will consider the proposed questions and promptly issue its request to the Copyright Office.

*Rosen Book Works*, 118 F. Supp. 3d 347, 353 (S.D.N.Y. 2016). That referral, however, never happened. PK voluntarily agreed to a dismissal with prejudice of the claims involving the '623 registration, and the Court granted that request, writing:

> In addition, the Court will refrain at this time from issuing its contemplated request to the Copyright Register, since Registration No. VAu 529-623 is no longer at issue in this action. In the words of the Copyright Register, "17 U.S.C. § 411(b)(2) was amended to ensure that no court holds that a certificate is invalid due to what it considers to be a misstatement on an application without first obtaining the input of the Register." Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at 10-11, *Olem Shoe Corp. v. Wash. Shoe Co*., 09 Civ. 23494 (S.D. Fla.), ECF No. 209. Since the validity of Registration No. VAu 529-623 is no longer at issue in this action, the purpose of § 411(b)(2) would not be served by making the previously contemplated referral. Although § 411(b)(2) is mandatory in nature, it does not compel the referral of mooted questions. Defendant does not contend otherwise.

6

*Rosen Book Works*, 1:15-cv-07406-JSR (S.D.N.Y. June 8, 2016) (*Rosen Book Works* ECF 48)

(Parness Dec. Ex. B).

In *Gareth Stevens*, Judge Woods twice declined to refer the '623 registration to the Copyright Office, <u>because he disagreed with Judge Rakoff's application of § 411(b)(2)</u>. According to Judge Woods, the mandatory referral requirement requires a finding on the part of the applicant of a knowing submission of an inaccuracy. As he explained:

> Section 411(b) provides, in part, that a certificate of registration will suffice as a prerequisite to a copyright infringement suit, even if it contains inaccurate information, unless "the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate." Even without an independent fraudulent intent requirement, there remains a genuine factual dispute concerning whether Ms. Kane "knew" the information was "inaccurate" in the relevant sense. This is so because, as Plaintiff rightly contends, "the issue of what 'knowing' means <u>in this context</u> cannot be separated from the fact that ... Ms. Kane relied on Copyright Office advice in preparing her corrected application." Pl.'s Opp'n Br. at 14 (emphasis in original). Put another way, context matters. If Ms. Kane had in fact disclosed to the Copyright Office that the photographs had been published, but the Copyright Office nevertheless instructed her to complete the 2001 application form in the way that she did, Ms. Kane might not have subjectively known the information that she included on the application form was inaccurate.

*Palmer/Kane LLC v. Gareth Stevens Publishing*, 1:15-cv-7404-GHW, 2016 WL 6238612, *5 (S.D.N.Y. Oct. 24, 2016). Judge Woods reiterated this conclusion in his partial denial of defendant's motion for summary judgment, writing:

> With respect to whether Ms. Kane included inaccurate information on the 2001 application form "with knowledge that it was inaccurate," the parties provide no additional evidence beyond what was before the Court – and found to be pervaded with factual disputes – previously. The Court need not repeat its analysis of that evidence in full here. In brief, although Ms. Kane concedes that the Images had been published at some point prior to her signing of the 2001 application form, she has submitted sufficient evidence that she subjectively believed she was following the CO's instructions to withstand summary judgment.

....

> For the reasons above, the Court concludes that triable issues of
> fact exist regarding whether Palmer/Kane included inaccurate
> information on its application for Registration No. VAu 529-623
> with knowledge that it was inaccurate within the meaning of
> Section 411(b). Because such a finding is a statutory prerequisite
> to invalidating a registration certificate for standing purposes,
> summary judgment may not be granted for either party on this
> issue. If the issue is resolved by the jury in Gareth Stevens's favor,
> the Court will then be required to refer the question to the Register
> of Copyrights pursuant to Section 411(b)(2) before making an
> ultimate determination.

*Palmer/Kane LLC v. Gareth Stevens Publishing*, 1:15-cv-7404-GHW, 2017 WL 3973957, *13-

14 (S.D.N.Y. Sept. 7, 2017). Shortly thereafter, the parties settled the *Gareth Stevens* case, and –

again – no referral was made to the Copyright Office about the '623 registration. *Palmer/Kane*

*LLC v. Gareth Stevens Publishing*, 1:15-cv-7404-GHW (Sept. 14, 2017) (stipulation of dismissal

with prejudice, noting that the parties had "entered into a Settlement Agreement and Release")

(*Gareth Stevens* ECF 105) (Parness Dec. Ex. C).

Neither Judge Rakoff nor Judge Woods ever referred the '623 registration to the

Copyright Office, and Judge Woods openly disagreed with Judge Rakoff as to whether that

referral was appropriate. Benchmark suggests that Judge Rakoff's conclusion that referral was

appropriate – which was never acted upon – should have preclusive effect on PK and should

require this court to make the referral. In view of the fact that there was no agreement among

Judge Rakoff and Judge Woods, we submit that this Court is not bound – especially at the

motion to dismiss stage – to make any such referral.

Benchmark also suffers from a fundamental misunderstanding of the nature of the

supposed "error" in the '623 registration, and the implications of that error, writing:

> In order to qualify for group registration, the photos contained in a
> collection must meet various requirements set forth in the
> regulations governing group registrations. *See* 37 C.F.R. §

> 202.3(b). For instance, published and unpublished photos cannot
> be covered by the same registration. *See, e.g., Family Dollar
> Stores, Inc. v. United Fabrics Int'l, Inc.*, 896 F. Supp. 2d 223, 230
> (S.D.N.Y. 2012) ("Wrongly identifying a number of published
> individual works as [part of] an unpublished collection is a
> fundamental registration error" invalidating registration). And,
> published photos must be "published within the same calendar
> year" in order to be registered as a group. 37 C.F.R. §
> 202.3(b)(10)(iii) (2018). In prior litigations pursued by P/K, courts
> have already rejected P/K's same registrations put forth here for
> failing to comply with these requirements.

Benchmark Br. at 5-6. As noted above, Benchmark's characterization of the prior litigations is

wrong. In addition, the implication that indicating "unpublished" in an application for group

registration of photographs that were actually published, is fatal to the registration, is also wrong.

The Compendium of U.S. Copyright Office Practices (Third Edition) (available at

www.copyright.gov/comp3/docs/compendium.pdf) (the "Compendium") (excerpts at Parness

Dec. Ex. A) explains that it:

> is the administrative manual of the Register of Copyrights
> concerning Title 17 of the United States Code and Chapter 37 of
> the Code of Federal Regulations. It provides instruction to agency
> staff regarding their statutory duties and provides expert guidance
> to copyright applicants, practitioners, scholars, the courts, and
> members of the general public regarding institutional practices and
> related principles of law.

Compendium (Parness Dec. Ex. A), Introduction at 1.

The Compendium further explains what its practices and procedures actually are when it

comes to the subject of applications that mistakenly indicate that the works are unpublished,

when in fact they are published:

> **1802.7(C) Publication Issues**
>
> ….
>
> Ordinarily, if the work was published on or before the date that the
> claim was filed with the Office, and if the applicant mistakenly
> claimed that the work was unpublished as of that date, the date of

9

publication cannot be added to the registration record with a supplementary registration. Instead, the applicant should submit a new application for a new basic registration using the procedure described in Section 1803 (subject to the limited exception discussed below).

These types of publication issues cannot be corrected with a supplementary registration unless the deposit requirement for a published work and an unpublished work are the same. As a general rule, the applicant must submit two complete copies of the best edition if the work was published on or after January 1, 1978, but only one complete copy is required for an unpublished work.

There is a limited exception to this rule. If a published work was erroneously registered as an unpublished work, the date of publication may be added to the registration record with a supplementary registration, provided that (i) the work was published on or after March 1, 1989, and (ii) the deposit requirement for that type of work would be the same regardless of whether the work was published or unpublished, such as architectural blueprints, mechanical drawings, globes, greetings cards, postcards, commercial prints and labels, as well as computer programs, databases, or other types of works that may be registered with identifying material.

Compendium (Parness Dec. Ex. A), Chapter 1800 at 13 (emphasis added).

This "limited exception" clearly applies to group registrations of photographs, for which the deposit requirements for published and unpublished collections are identical:

### 1116.4 Deposit Requirements

This Section discusses the deposit requirements for registering a group of published photographs. In all cases, the applicant must submit one copy of each photograph in the group and all the photographs must be submitted in the same format.

Compendium (Parness Dec. Ex. A), Chapter 1100 at 57-58 (emphasis added) (*citing* 37 C.F.R. §§ 202.3(b)(10)(x), 202.20(c)(2)(xx)).

### 1102 The Unpublished Collection Option

The U.S. Copyright Office has established an administrative procedure that allows an applicant to register a number of unpublished works with one application, one filing fee, and one set

> of deposit copies. This is known as the "unpublished collection"
> option.  As a general rule, a registration issued under this option
> covers each work that is submitted for registration. If the applicant
> does not assert a claim in the selection, coordination, or
> arrangement of those works, the Office considers each work to be
> registered individually.

*Id*. at 1-2 (emphasis added) (*citing* 37 C.F.R. § 202.3(b)(4)(i)(B)).

Thus, the deposit requirements for published and unpublished group registrations of photographs are identical – one set of copies is required.  In its summary of deposit requirements, the Compendium explains that the deposit requirement for unpublished works is "[i]dentifying material representing the entire copyrightable content," the deposit requirement for "[p]ictorial or graphic works" is "[t]wo complete copies of the best edition of the work," and for the deposit requirement for "[g]roup registration of published photographs" the Compendium refers the reader to Section 1116.4, which is included above:

| Two-Dimensional Visual Arts Works | | |
| --- | --- | --- |
| **Nature of the Work** | **Published** | **Unpublished** |
| Unpublished works | n/a | Identifying material representing the entire copyrightable content |
| Pictorial or graphic works (*e.g.*, art-work, drawings, illustrations, paint-ings, posters, photographs, prints, brochures, exhibition catalogs) first published in the United States before 1/1/1978 | Two complete copies of the work as first published | n/a |

| | | |
| --- | --- | --- |
| Pictorial or graphic works first pub-lished in the United States between 1/1/1978 and 3/1/1989 that are not listed below | Two complete copies of the best edition of the work (including the copyright notice for the first pub-lished edition) | n/a |
| Pictorial or graphic works first published in the United States after 3/1/1989 that are not listed below | Two complete copies of the best edi-tion of the work | n/a |

| | | |
|---|---|---|
| Group registration of contributions to periodicals | *See Chapter 1100*, Section 1115.5 | n/a |
| Group registration of published photographs | *See Chapter 1100*, Section 1116.4 | n/a |
| Group registration of databases that consist predominantly of photographs | *See Chapter 1100*, Section 1117.6 | *See Chapter 1100*, Section 1117.6 |

Compendium (Parness Dec. Ex. A), Chapter 1500 at 61-62.

Because the deposit requirements for published and unpublished group registrations of photographs are identical, the Copyright Office states that "[i]f a published work was erroneously registered as an unpublished work, the date of publication may be added to the registration record with a supplementary registration." Meaning, if it is determined that the '623 registration suffers from this error, it is correctable without any negative impact on the validity of the registration.

## B. The '358 Registration Has Been Augmented – Not Invalidated – to Address and Clarify the Concerns Raised in Prior Litigations

In *Rosen Book Works*, Judge Rakoff determined that the '358 registration – a group registration indicating its photographs were "unpublished" – erroneously included some published photographs. He therefore dismissed claims relating to five images covered by the '358 registration, upon his finding that they "were licensed for publication prior to 2002." *Palmer/Kane LLC v. Rosen Book Works*, 204 F. Supp. 3d 565, 275-73 (S.D.N.Y. 2016). Judge Rakoff did not invalidate the '358 registration, but rather dismissed infringement the claims linked to specific photographs for which evidence had been presented showing that they were in fact published.

What had occurred, apparently, is that the database that Corbis provided to PK for purposes of its copyright application had included both published and unpublished photographs,

unbeknownst to PK.  Once this came to light in the *Rosen Book Works* case, PK took steps to

correct the records of the Copyright Office.  On January 19, 2018, PK filed an application for a

Supplemental Registration, which resulted in registration VA0002127862 (the "'862"

registration) (Parness Dec. Ex. D).  Under the heading "Amplifications Explained" the Copyright

Office wrote "Application for registration was not intended to include previously registered, pre-

existing material that was a part of the Palmer Kane collection and therefore included in the

printout provided by Corbis."  Again, the Compendium provides a good explanation of this

process:

> **1802 Supplementary Registration: Correcting or Amplifying the Information in a Registration**
>
> A supplementary registration is a special type of registration that may be used "to correct an error in a copyright registration or to amplify the information given in a registration." 17 U.S.C. § 408(d).
>
> A supplementary registration identifies an error or omission in a basic registration and places the correct information or additional information in the public record. Supplementary registrations may be used only to correct or amplify limited issues involving certain types of registrations, which are listed in Section 1802.3 below. *Id.*; 37 C.F.R. § 202.6.
>
> When the U.S. Copyright Office issues a supplementary registration, it does not cancel or replace the basic registration or the registration number for that registration. Likewise, the Office will not change the information set forth in the basic registration or the public record for that registration. Instead, the Office assigns a separate registration number and effective date of registration to the supplementary registration. The basic registration and the supplementary registration coexist with each other in the public record, and the supplementary registration augments – but does not supersede – the information set forth in the basic registration.

Compendium (Parness Dec. Ex. A), Chapter 1800 at 1 (emphasis added) (*citing* 17 U.S.C. §

408(d); 37 C.F.R. § 202.6(f)(2)).  The Copyright Office determined that supplementation of the

'358 registration was appropriate, and issued the '862 registration (Parness Dec. Ex. D). Benchmark's statement in its brief that the '358 registration has been invalidated is false.

### C.    The '724 Registration Remains Valid

Benchmark argues that Judge Rakoff invalidated both the '358 registration and the '724 registration. This is incorrect. While it is true that Judge Rakoff dismissed claims for copyright infringement based on images that he determined – on the evidence presented in the *Rosen Book Works* case – had been previously published, he did not invalidate either registration. As discussed in the previous section, in fact, the '358 registration clearly remains valid following the Copyright Office's acceptance of the '862 supplementary registration, as "[t]he basic registration and the supplementary registration coexist with each other in the public record, and the supplementary registration augments – but does not supersede – the information set forth in the basic registration." Compendium (Parness Dec. Ex. A), Chapter 1800 at 1. Indeed, in the case of the '724 registration Judge Rakoff dismissed only a single claim for copyright infringement based on a single photograph. *See Rosen Book Works*, 204 F. Supp. 3d at 573 ("the Court's analysis applies with equal force to Image No. 10"). The '724 registration has been found to contain one published work. Although PK has not taken steps to supplement that registration as yet, the registration itself remains valid. PK may not bring claims under the '724 registration based on photographs that were in fact published, but Benchmark has not demonstrated or even suggested that the single '724 claim in <u>this</u> case suffer from such a problem.[3]

---

[3] As noted above, the Complaint erroneously assigns one of the photographs to the '724 registration that it should have assigned to the '210 registration.

**D.** **Benchmark's Caselaw Does Not Relate to Group Registration of Photographs, Making It Irrelevant**

Benchmark cites two cases to support its position that the errors in PK's registration invalidate the registrations, but fails to realize why they are inapplicable to group registrations of photographs. As noted above, PK's registrations meet the "limited exception" for types of works for which "the deposit requirement for that type of work would be the same regardless of whether the work was published or unpublished." The two cases Benchmark cites relate to fabrics and textile patterns, which do not qualify for the limited exception, making them inapposite. *See Family Dollar Stores, Inc. v. United Fabrics Intern., Inc.*, 896 F.Supp.2d 223, 225-26 (S.D.N.Y. 2012) ("UFI filed an application with the United States Copyright Office to register the Mod Squad design and 18 other fabric designs as an unpublished collection….UFI filed its motion for partial summary judgment…and the FD Defendants cross-moved for summary judgment to dismiss UFI's counterclaims"); *Urban Textile, Inc. v. Cato Corporation*, 2:14-cv-06967-ODW, 2016 WL 6804911, *1 (C.D. Cal. 2016) ("[b]efore the Court is Defendant Cato Corporation's [] Motion for Summary Judgment on Plaintiff Urban Textile, Inc.'s [] claim for copyright infringement concerning its apparel design."). Textile designs, unlike photographs, have different deposit requirements for published and unpublished collections, as reflected above. It may have been correct for the judges in *Family Dollar* and *Urban Textile* – on motions for summary judgment – to rule as they did, but this case involves the completely distinguishable situation of group registration of photographs, where any error of this kind would not invalidate the registration.

## II.    None of PK's Claims Are Barred by Statute of Limitations

Benchmark's secondary argument is based on statute of limitations.  In short, Benchmark argues that PK knew of two of Benchmark's infringements a decade or more ago, and that knowledge placed PK on inquiry notice.  Benchmark's premise and conclusion are wrong.

### A.    PK Does Not Allege It Knew of Any Infringements in 2005

Benchmark focuses on the words "at the time," which appear twice in the complaint in the context of two of the illustrative examples of infringements that PK provides to assist the Court:

> **"Family Watching Falling Star"**
>
> 37. This photograph, reproduced below, was licensed to Benchmark through Corbis for limited editorial use on June 28, 2004, and appeared in the book entitled *Stars*, which was published in or around 2004. The license expired on June 28, 2005.
>
> 38. Upon information and belief, based on the royalty information reported to Palmer/Kane and the rate schedule in effect at the time, Benchmark used the photograph in a manner that materially exceeded the size limitation in the license, and this use is infringing.
>
> ….
>
> **"Boy and Girl Looking at Globe"**
>
> 40. This photograph, reproduced below, was licensed to Benchmark through Corbis for limited editorial use on November 9, 2006, and appeared in the book entitled *Mapping the Way*, which was published in or around 2007. The license expired on November 9, 2007.
>
> 41. Upon information and belief, based on royalty information reported to Palmer/Kane and the rate schedule in effect at the time, not only was the size enlarged beyond the scope of the license, but the license did not include a second use of the photograph, and these uses are infringing.

Complaint (ECF 1) at 10-11 (emphasis added).

The words "at the time" and the phrase "the rate schedule in effect at the time" do not mean – and are certainly not intended to mean – that PK knew of the infringements "at the time." Rather, PK clearly alleges that present-day application of the then-applicable rate schedules to the facts as we now know them indicates that the uses were infringing. Benchmark's attempt to twist PK's words in this fashion should be rejected out of hand. Its follow-on conclusion that PK was on "inquiry notice" from 2005 should likewise be rejected, as no inquiry notice can exist without an inception event that triggered the alleged obligation to inquire.

### B. Benchmark's Laches Argument Has Been Rejected by the United States Supreme Court

Benchmark's argument is all the more surprising in its willingness to ignore binding United States Supreme Court precedent holding that in copyright cases, arguments sounding in laches do not override the application of the three-year statute of limitations on such claims, and that application of the statute of limitations in copyright is governed by the separate accrual rule, and the three-year "lookback," which operate together as follows:

> [W]hen a defendant commits successive violations, the statute of limitations runs separately from each violation. Each time an infringing work is reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a discrete "claim" that "accrue[s]" at the time the wrong occurs. In short, each infringing act starts a new limitations period…..Thus, when a defendant has engaged (or is alleged to have engaged) in a series of discrete infringing acts, the copyright holder's suit ordinarily will be timely under § 507(b) with respect to more recent acts of infringement (*i.e.*, acts within the three-year window), but untimely with respect to prior acts of the same or similar kind.

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1969-70 (2014). "Each act of infringement is a distinct harm giving rise to an independent claim for relief." *Stone v. Williams*, 970 F.2d 1043, 1049-50 (2d Cir. 1992) (*citing Mount v. Book-of-the-Month Club, Inc*., 555 F.2d 1108 (2d Cir.1977)).

At an absolute minimum, PK is entitled to the damages (statutory or actual damages, at PK's election) arising from physical and digital prints, distributions and sales of the infringing Benchmark works from the date three years before the filing of the Complaint (October 12, 2015) and forward.   PK has the opportunity to argue that that date should be further moved back for several reasons, including (i) that PK should not have been expected to recognize the infringements immediately as they arose due to the lack of publicly-available information about Benchmark's textbooks and specifically the photographs used in those textbooks; and (ii) that Benchmark took steps to prevent or delay PK from learning of the infringements.   Those inquiries, however, must wait until the parties engage in fact discovery and determine the answers to the relevant underlying questions relating to these issues.   *See*, *e.g.*, *Grant Heilman Photography, Inc. v. Pearson Educ., Inc*., No. 11-CV-4649, 2012 WL 12897914 (E.D. Pa. July 27, 2012) (pre-*Petrella* decision addressing cross-motions to compel discovery addressed to identifying number of actionable infringements by defendant publisher that used plaintiff photography company's images in its books); *Fischer v. Forrest*, 14-cv-1304-PAE-AJP, 2017 WL 128705, at *6–7 (S.D.N.Y. Jan. 13, 2017), *report and recommendation adopted*, 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017) (denying motion to dismiss because court lacked sufficient information to determine precisely which acts of infringement occurred within the limitations period).

PK's allegations of infringement do not limit themselves to precise acts of infringement that PK has uncovered, because PK does not have the information held solely by Benchmark regarding all of the printings, distributions and sales of its infringing works.   PK lists its infringements in **<u>Exhibit A</u>** to the Complaint, which is reproduced above.   It also provides

exemplary details of infringements it has uncovered, and its allegations about Benchmark's practices with respect to its publication, distribution and sale of its digital and print books:

**"Children Using Flash Cards"**

21. This photograph, reproduced below, was licensed to Benchmark through Corbis for limited editorial use on February 17, 2004, and appeared in the textbook entitled *Welcome to our School*, which was published in or about 2004:

22. In July 2009, Corbis withdrew this image from its collection, and returned all rights to license this work to Palmer/Kane, with no survival rights remaining with Corbis.

23. Upon information and belief, in 2015, Benchmark published a new edition of *Welcome to our School*, which included "Children Using Flash Cards."

24. Benchmark did not seek or obtain any license to use "Children Using Flash Cards" in the new edition of *Welcome to our School*, and this use is infringing.

….

**"High School Chemistry"**

26. This photograph, reproduced below, was licensed to Benchmark through Corbis for limited editorial use on June 28, 2004, and appeared in the textbook entitled *Science Measuring Tools*, which was published in or around 2004. The license expired on June 28, 2005.

27. In 2011, well after the expiration of the license, Benchmark published a Spanish edition of Science Measuring Tools for use in the US market, entitled *Hablemos de los continents*, which included "High School Chemistry," and this use is also infringing:

….

**"Boy and Girl Looking at Star Fish"**

29. This photograph, reproduced below, was licensed to Benchmark through Corbis for limited editorial use on October 16, 2006, and appeared in the textbook entitled *Life at the Beach*, which was published in or around 2006. The license expired on October 16, 2007.

30. In 2009, well after the expiration of the license, Benchmark facilitated or licensed the publishing of at least one foreign edition of *Life at the Beach* with an overseas publisher, and this use is also infringing.

….

**"Family Beach Outing"**

32. This photograph, reproduced below, was licensed to Benchmark through Corbis for limited editorial use on October 9, 2006, and appeared in the book entitled *Summer to Fall*, which was published in or around 2007. The license expired on October 9, 2007.

33. Benchmark participates in a process by which 19 (21 at the time) states, called "adoption" states, approve educational materials for all its school systems, a process also employed by many major cities and counties.

34. Summer to Fall, the textbook in which the "Family Beach Outing" infringement appears, can be found as a current selection on the state-wide adoption lists of the three largest adoption states, California, Texas and Florida, as well as New York City.

….

**"Family Watching Falling Star"**

37. This photograph, reproduced below, was licensed to Benchmark through Corbis for limited editorial use on June 28, 2004, and appeared in the book entitled *Stars*, which was published in or around 2004. The license expired on June 28, 2005.

38. Upon information and belief, based on the royalty information reported to Palmer/Kane and the rate schedule in effect at the time, Benchmark used the photograph in a manner that materially exceeded the size limitation in the license, and this use is infringing.

….

**"Boy and Girl Looking at Globe"**

40. This photograph, reproduced below, was licensed to Benchmark through Corbis for limited editorial use on November

9, 2006, and appeared in the book entitled *Mapping the Way*, which was published in or around 2007. The license expired on November 9, 2007.

41. Upon information and belief, based on royalty information reported to Palmer/Kane and the rate schedule in effect at the time, not only was the size enlarged beyond the scope of the license, but the license did not include a second use of the photograph, and these uses are infringing.

….

**"Sampling Water"**

43. This photograph, reproduced below, was licensed to Benchmark through Corbis for limited editorial use on January 31, 2006, and appeared in the book entitled *Ocean Pollution*, which was published in or around 2007.

44. This title was found in a US library in a set of 6 leveled readers called *The Environment*, which contains six leveled readers, including *Ocean Pollution*, six teachers' guides, and an ebook version of each title, all of which are dated 2006.

….

46. All Benchmark titles appear in a variety of digital formats including whiteboard and talking ebooks, with the possible exception of one title which does appear on Google Play. Upon information and belief, digital formats are published contemporaneously with the corresponding ink-on-paper formats.

47. Most recently Benchmark has introduced an online database that appears on information and belief to include all titles containing Palmer/Kane images with the one exception of *Crazy Fruit Salad*. This digital product allows for unlimited downloading by students on school or home computers, or anywhere they have Internet connectivity with a tablet or laptop computer.

48. Upon knowledge and belief, each of the digital formats and the new subscription-based online database described above are not uses that were included in the licenses Benchmark obtained from Corbis for the use of Palmer/Kane's images, and these uses are all infringing.

Complaint (ECF 1) (photographs omitted). PK has more than satisfied its obligation to provide

notice pleading to Benchmark, and it is entitled to move forward – at a minimum – on any acts of

infringement that took place on or after October 12, 2015. There is no statute of limitations problem, and for this additional reason the motion to dismiss should be denied.

## III.    Benchmark's Additional Arguments Are Premature

Benchmark's remaining arguments for dismissal are not case-dispositive, and in some respects are not in dispute. Simply put, Benchmark argues that – ultimately – PK will not be able to prevail on primary infringement claims for which it does not identify acts of infringement by Benchmark, and will not be able to prevail on secondary infringement claims for which it does not identify primary acts of infringement by third parties for which Benchmark has responsibility under one of the prevailing theories of copyright secondary liability (inducement, contributory and vicarious). These principles are not at all controversial. We agree that if we fail to meet the evidentiary burden for a claim, it will fall away. For now, however, PK has sufficiently pled its claims both for additional primary infringements and for secondary infringements, to allow it to take discovery.

PK has identified 12 Benchmark infringements, and has identified the Benchmark publications in which it has found those infringing uses. It has also alleged upon information and belief, that Benchmark has engaged in additional infringements of these same photographs, and additional infringements of other PK photographs:

> 4. Upon information and belief, the infringements detailed in this Complaint are but a fraction of the acts of copyright infringement that Benchmark committed, as they represent what Palmer/Kane has been able to discover through its own research, without access to Benchmark's records revealing the full scope of infringing publications.
>
> ….
>
> 17. To date, Palmer/Kane has identified at least 12 acts of infringement by Benchmark of its Photographs. These infringements are set forth in the chart attached as Exhibit A. Palmer/Kane is continuing to investigate the actions of

Benchmark, and will seek discovery from Benchmark in the course of the litigation, all of which will undoubtedly identify additional acts of infringement. Palmer/Kane reserves the right to amend Exhibit A and this Complaint accordingly. Some of the infringements already identified involve uses by Benchmark of photographs that were licensed to Benchmark for limited editorial uses, but where Benchmark used the photographs in a manner that far exceeded the limited scope of the license.

….

24. Benchmark did not seek or obtain any license to use "Children Using Flash Cards" in the new edition of Welcome to our School, and this use is infringing.

25. Similarly, Palmer/Kane has identified multiple acts of infringement involving at least four additional Palmer/Kane Photographs, which Benchmark published in new print editions of textbooks containing the Photographs after Corbis relinquished the right to do so.

….

27. In 2011, well after the expiration of the license, Benchmark published a Spanish edition of Science Measuring Tools for use in the US market, entitled *Hablemos de los continents*, which included "High School Chemistry," and this use is also infringing:

28. Palmer/Kane has identified at least four other Benchmark Spanish Translation (US Market) editions using Palmer/Kane photographs after any expiration of the license to do so.

….

35. Upon information and belief other Benchmark titles with Palmer Kane images appear or have appeared on the approval lists for these three states and along with Summer to Fall, likely appear on other states' approval lists of acceptable core and supplemental programs.

36. These adoption-state and major city elections require publishers to provide substantial inventory to fulfill orders in a timely manner. Upon information and belief these inventory requirements collectively would exceed the total print run Benchmark has licensed at 100,000 for the life of the title and all its ancillary publications, and these excesses are infringing.

….

38. Upon information and belief, based on the royalty information reported to Palmer/Kane and the rate schedule in effect at the time, Benchmark ["Family Watching a Falling Star"] in a manner that materially exceeded the size limitation in the license, and this use is infringing.

39. Upon information and belief, the same royalty reporting indicates that Benchmark exceeded the size limitations on at least five additional licenses of Palmer/Kane images.

….

41. Upon information and belief, based on royalty information reported to Palmer/Kane and the rate schedule in effect at the time, not only was the size enlarged beyond the scope of the license, but the license did not include a second use of the ["Boy and Girl Looking at Globe"], and these uses are infringing.

42. Upon information and belief, at least one other Benchmark title containing a Palmer/Kane photograph has an unlicensed second use, and because physical copies of 11 out of the 13 books already at issue are unavailable to Palmer/Kane, there may be additional unlicensed duplication of images.

Complaint (ECF 1) (photographs omitted).

PK likewise provided notice pleading as to alleged acts of secondary copyright infringement:

30. In 2009, well after the expiration of the license, Benchmark facilitated or licensed the publishing of at least one foreign edition of Life at the Beach with an overseas publisher, and this use is also infringing.

31. Palmer/Kane has identified at least five other Benchmark foreign titles published overseas in cooperation with one or more foreign publishers in violation of the prohibitions against permanently retaining high resolution image files and the transfer of licensing rights in the license terms governing the use of the photographs.

*Id.*

PK elaborates, in its Third and Fourth Causes of Action, that the foreign publishing company it has identified through its independent research is Terbilang Buku. Benchmark feigns

ignorance as to that company.  *See* Benchmark Br. at 17 ("The Complaint, however, does not identify "Terbilang Buku" nor any publication or display made by he, she, or it.").  We believe that Benchmark knows exactly what is being referred to, and if it had any doubt, a search of its own records, or even a simple Google search would have refreshed its recollection.

**CONCLUSION**

Defendant's Motion to Dismiss should be denied.

Dated: New York, New York
      April 1, 2019

PARNESS LAW FIRM, PLLC

By: _____/s/ Hillel I. Parness_____
Hillel I. Parness
136 Madison Ave., 6th Floor
New York, New York  10016
(212) 447-5299
hip@hiplaw.com
Attorneys for Plaintiff Palmer/Kane LLC
